**CARSON & NOEL, PLLC**
Wright A. Noel (Bar No. 25264)
20 Sixth Avenue, NE
Issaquah, Washington, 98027
Telephone: (425)-395-7786
Facsimile: (425) 837-5396
Email: wright@carsonnoel.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (*pro hac vice forthcoming*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*pro hac vice forthcoming*)
Sean L. Litteral (*pro hac vice forthcoming*)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
        slitteral@bursor.com

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| TIMOTHY AKINS, TARA MILLHOUSE, PAMELA LANE, CEDRIC GAY, LORI WILLIAMS, BRYAN MORTON, SAJAN GEORGE, CYNTHIA HALTON, SEAN JORDAN, TERRI MARBLE, individually and on behalf of all others similarly situated,<br><br>                         Plaintiff,<br><br>    v.<br><br>T-MOBILE USA, INC.,<br>                     Defendant. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

Plaintiffs Timothy Akins, Tara Millhouse, Pamela Lane, Cedric Gay, Lori Williams, Bryan Morton, Sajan George, Cynthia Halton, Sean Jordan, and Terri Marble (collectively, "Plaintiffs") brings this action on behalf of themselves and all others similarly situated against Defendant T-Mobile USA, Inc. (hereafter, "T-Mobile"), and allege, upon personal knowledge as to their own actions, their counsel's investigation, and facts that are a matter of public record, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

5.     This is a class action against Defendant T-Mobile for its failure to safeguard the highly sensitive and personal information entrusted to it by its consumers (the "Private Information").  For the fifth time in four years, T-Mobile users find themselves on the heels of a nationwide data breach for which T-Mobile's defenses proved yet again to be inept (the "Data Breach").[1]  Rather than strengthen its security, T-Mobile, through its recklessness, has chosen to stand idly by, resting on its assurances to consumers that "[w]e take our customers' protection very seriously."[2]  But according to John Binns—the 21-year-old behind the security breach—"[T-Mobile's] security is awful."[3]  Specifically, Mr. Binns explained that on or around August 4, 2021, he was able to burrow into the servers that contained Private Information for millions of T-Mobile's customers.  He was able to do so after "discovering in July an unprotected router exposed on the internet."[4]  Consequently, Plaintiffs and approximately 40 million former or prospective customers who applied for credit with

---

[1] Cammy Pedroja, "T-Mobile Hacked for 5th Time in 4 Years in Latest Breach; Nearly 50 Million Affected," *Newsweek* (Aug. 8, 2021), https://www.newsweek.com/t-mobile-hacked-5th-time-4-years-latest-breach-nearly-50-million-affected-1620710 (last visited Aug. 25, 2021).
[2] *Id.*
[3] Drew FitzGerald and Robert McMillan, "T-Mobile Hacker Who Stole data on 50 Million Customers: 'Their Security Is Awful,'" *The Wall Street Journal* (Aug. 26, 2021), https://www.wsj.com/articles/t-mobile-hacker-who-stole-data-on-50-million-customers-their-security-is-awful-11629985105?mod=flipboard (last visited Aug. 27, 2021).
[4] *Id.*

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

T-Mobile, 7.8 million current postpaid customers, and 850,000 active prepaid customers (the "Class Members")[5] had their Private Information stolen.

6.     The Private Information compromised in the Data Breach includes names, phone numbers, drivers' licenses, government identification numbers, Social Security numbers, dates of birth, and T-Mobile account PINs.[6]  Plaintiffs bring this class action lawsuit on behalf of those similarly situated to address T-Mobile's continued failure to safeguard Class Members' Private Information that it collected and maintained.

7.     T-Mobile held the Private Information in a reckless manner.  In particular, the Private Information was maintained on T-Mobile's computer system and network in a condition vulnerable to cyberattacks.  The mechanism of the cyberattack and potential for improper disclosure of Plaintiffs' and Class Members' Private Information was a known risk to T-Mobile, and T-Mobile failed to take steps necessary to secure the Private Information from the risk of a ransomware attack.

8.     Plaintiffs' and Class Members' identities are now at risk because of Defendant's negligent conduct since the Private Information that T-Mobile collected and maintained is now in the hands of data thieves.  Armed with the Private Information accessed in the Data Breach, data thieves can commit a variety of crimes, including but not limited to fraudulently applying for unemployment benefits, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' information to obtain government benefits (including unemployment or COVID relief benefits), filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph and providing false information to police during an arrest.

---

[5] *See* "T-Mobile Shares Additional Information Regarding Ongoing Cyberattack Investigation, T-Mobile" (Aug. 17, 2021), https://finance.yahoo.com/news/t-mobile-shares-additional-information-053700200.html?guccounter=1 (last visited Aug. 20, 2021).
[6] *Id.*

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

9.      Plaintiffs' and Class Members' Private Information was compromised due to T-Mobile's negligent and/or careless acts and omissions and its failure to adequately protect the Private Information of its current, former, and prospective clients despite the fact that it had been on notice for at least four years that its security measures were ineffective at warding off malicious hackers. As a result of the Data Breach, Plaintiffs and Class Members are exposed to a heightened present and imminent risk of fraud and identity theft.  As a result of Defendant's actions and inactions, as set forth herein, Plaintiffs and Class Members must now and in the future closely monitor their financial accounts and information to guard against identity theft, among other issues.

10.      Plaintiffs and Class Members have and may in the future incur actual monetary costs, including but not limited to the cost of purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.  Plaintiffs and Class Members have and may in the future expend time spent mitigating the effects of the Data Breach, including time spent dealing with actual or attempted fraud and identity theft.

11.      By their Complaint, Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose Private Information was accessed during the Data Breach.  Accordingly, Plaintiffs bring this action on behalf of all persons whose Private Information was compromised as a result of T-Mobile's negligence and failure to: (i) adequately protect its customers Private Information, (ii) warns its current, former, and potential customers of its inadequate information security practices, and (iii) effectively monitor its data systems for security vulnerabilities and incidents.  T-Mobile's conduct amounts to negligence and violates federal and state statutes.

12.      Plaintiffs seek remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to T-Mobile's

data security systems, future annual audits, and adequate credit monitoring services funded by T-Mobile.

## PARTIES

13.    Plaintiff Timothy Akins is a citizen of California residing in Lancaster, California.

14.    Plaintiff Tara Millhouse is a citizen of California residing in Stockton, California.

15.    Plaintiff Pamela Lane is a citizen of California residing in Grass Valley, California.

16.    Plaintiff Cedric Gay is a citizen of Florida residing in Tampa, Florida.

17.    Plaintiff Lori Williams is a citizen of Florida residing in Fort Myers, Florida.

18.    Plaintiff Bryan Morton is a citizen of New York residing in Brooklyn, New York.

19.    Plaintiff Sajan George is a citizen of New York residing in Pearl River, New York.

20.    Plaintiff Cynthia Haltom is a citizen of Washington residing in Arlington, Washington.

21.    Plaintiff Sean Jordan is a citizen of Washington residing in Seattle, Washington.

22.    Plaintiff Terri Marble is a citizen of Washington residing in Seattle, Washington.

23.    Defendant T-Mobile is a for-profit company incorporated in Delaware with its principal place of business in the State of Washington at 12920 SE 38th Street, Bellevue, Washington, 98006.

24.    Defendant T-Mobile is a for-profit company incorporated in Delaware with its principal place of business in the State of Washington at 12920 SE 38th Street, Bellevue, Washington, 98006.

## JURISDICTION AND VENUE

25.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from T-Mobile.

26.     This Court has personal jurisdiction over T-Mobile because T-Mobile has its principal place of business located in the State of Washington.

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

27.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in, were directed to, and/or emanated from this District.  T-Mobile resides within this judicial district and a substantial part of the events giving rise of the claims alleged herein occurred within this judicial district.

## INTRADISTRICT ASSIGNMENT

28.     Assignment to the Seattle Division is appropriate under Civil Local Rule 3(e)(1) because a substantial part of the events or omissions which gave rise to Plaintiffs' claims occurred within King County, including the location of T-Mobile's headquarters which likely served as the hub of T-Mobile decisions concerning data protection for its users.

## FACTUAL ALLEGATIONS

29.     T-Mobile is an international telecommunications company that provides mobile communication services, amongst other products and services, throughout the United States and across the world.  In 2019 alone, T-Mobile claims to have increased its customer base by 7 million and had revenues totaling $45 billion.[7]

30.     As of the second quarter of 2021, T-Mobile had 104.8 million customers, making it one of the largest telecommunications providers in the United States and in the world.[8]  Upon information and belief, in the ordinary course of doing business, T-Mobile collects sensitive Private Information from customers and potential customers such as:

-     Name;

-     Address;

-     Phone Number;

---

[7] *See Our Story*, T-Mobile, https://www.t-mobile.com/our-story (last visited Aug. 20, 2021).
[8] *See Investor Factbook*, T-Mobile,
https://s24/q4cdn/com/400059132/files/doc_financials/2021/q2/NG_TMUS-06_30_2021-EX-99.2.pdf, at p. 6 (last visited Aug. 20, 2021).

- Driver's License Number;

- Social Security Number;

- Financial Information;

- Government Identification Number; and

- Date of Birth

31.     In the course of collecting Private Information from customers and potential customers, including Plaintiffs and Class Members, T-Mobile promises to provide confidentiality and security for customers' and potential customers' Private Information, including by promulgating and placing privacy policies on its website.  In the T-Mobile Privacy Notice (hereafter, "Privacy Notice"), which is effective as of May 5, 2021 and provided on Defendant's website, Defendant states that Customers "trust T-Mobile to connect [them] to the world every day, and we're working hard to earn a place in [their] heart[s].  A big part of that is maintaining [customer] privacy."[9]

32.     Further in the Privacy Notice, T-Mobile promises to protect customer's Private Information and that it uses "administrative, technical, contractual, and physical safeguards designed to protect [customer] data while it is under our control."[10]  However, T-Mobile failed to protect and safeguard Plaintiffs' and Class Members' Private Information.  In fact, there is no indication that Defendant followed even its most basic promises.  For example, T-Mobile does not claim that any of the stolen Private Information was encrypted, including usernames and passwords.

**B.     The Data Breach**

33.     On or about Sunday, August 15, 2021, news broke on Vice.com of hackers claiming to have accessed data relating to over 100 million people, which they were offering for sale online.

---

[9] *T-Mobile Privacy Notice*, T-Mobile, https://www.t-mobile.com/privacy-center/our-practices/privacy-policy (last visited Aug. 20, 2021).
[10] *Id.*

The seller sent a message to Motherboard saying, "T-Mobile USA. Full customer info."[11]  The seller said it compromised multiple servers related to T-Mobile.  The seller was asking for 6 bitcoin or roughly $270,000 for a subset of data containing 30 million SSNs and driver's licenses and said that they were looking to sell the remaining information privately.[12]  The seller further claimed that "I think [T-Mobile] already found out because we lost access to the backdoored servers."[13]

34.    Motherboard confirmed that the information came from T-Mobile servers and included, at a minimum, social security numbers, phone numbers, names, physical addresses, unique IMEI numbers, and driver's license information.  Motherboard confirmed this to be accurate.[14]

35.    On August 16, 2021, T-Mobile released a statement that a sophisticated cyberattack had enabled "unauthorized access to some T-Mobile data" by cyberthieves and that it had launched an investigation into the Data Breach.[15]

36.    On August 17, 2021, T-Mobile released a statement saying that "[while] our investigation is still underway and we continue to learn additional details, we have now been able to confirm that the data stolen from our systems did include some personal information."[16]

37.    On August 19, 2021, T-Mobile posted a "Notice of Data Breach" on its website, confirming that: "T-Mobile learned that a bad actor illegally accessed personal data.  Our investigation is ongoing, but we have verified that a subset of T-Mobile data had been accessed by

---

[11] Joseph Cox, "T-Mobile Investigating Claims of Massive Customer Data Breach," Vice," Vice (Aug. 15, 2021), https://www.vice.com/en/article/akg8wg/tmobile-investigating-customer-data-breach-100-million (last visited Aug. 25, 2021).
[12] *Id.*
[13] *Id.*
[14] Michael Hill, "The T-Mobile Data Breach: A Timeline," CSO (Aug. 23, 2021), https://www.csoonline.com/article/3630093/the-t-mobile-data-breach-a-timeline.html (last visited Aug. 25, 2021).
[15] *T-Mobile Cybersecurity Incident Update*, T-Mobile (Aug. 16, 2021), https://www.t-mobile.com/news/network/cybersecurity-incident-update-august-2021 (last visited Aug. 20, 2021).
[16] *Supra*, note 1.

---

unauthorized individuals and the data stolen from our systems did include some personal information."[17]

38.     T-Mobile also began texting the following notice, in part, to Class Members, including all Plaintiffs: "T-Mobile has determined that unauthorized access to some of your personal data has occurred."

39.     In addition, the initial investigation discovered that "7.8 million current T-Mobile postpaid customer accounts' information appears to be contained in the stolen files, as well as just over 40 million records of former or prospective customers who had previously applied for credit with T-Mobile."[18]

40.     T-Mobile also confirmed that the cyberthieves accessed and stole "customers' first and last names, date of birth, SSN, and driver's license/ID information for a subset of current and former postpay customers and prospective T-Mobile prepaid customer names, phone numbers and account PINs[.]"[19]

41.     At this time, T-Mobile has not indicated how long the unauthorized third-party had unfettered access to sensitive, protected, and confidential customer information stored on T-Mobile's network, such as Plaintiffs' and Class Members' Private Information.  Had T-Mobile taken its data security obligations more seriously, T-Mobile would have discovered and stopped the unauthorized intrusion sooner.

42.     Upon information and belief, the cyberattack was targeted at T-Mobile due to its status as a leading telecommunications company that collects and maintains valuable Private Information, such as Social Security numbers and financial information.  The targeted cyberattack

---

[17] *See Notice of Data Breach: Keeping You Safe from Cybersecurity Threats*, T-Mobile (Aug. 19, 2021), https://www.t-mobile.com/brand/data-breach-2021 (last visited Aug. 20, 2021).
[18] *Supra*, note 1.
[19] *Id.*

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

was expressly designed to gain access to private and confidential data, including (amongst other things) the Private Information of current, former, and prospective customers, like Plaintiffs and the Class Members. Because of this targeted cyberattack, data thieves were able to gain access to T-Mobile's servers and subsequently access and siphon the protected Private Information of Plaintiffs and Class Members.

43.    By T-Mobile's own admission, "we have now been able to confirm that the data stolen from our systems did include some personal information" which means that Plaintiffs' and Class Members Private Information was siphoned as well, not merely viewed without authorization. The files accessed by this incident contained the following information: names, dates of birth, phone numbers, drivers' licenses, government identification numbers, Social Security numbers, and T-Mobile account PINS.

44.    There is no indication that the Private Information contained in the stolen files was encrypted. Plaintiffs' Private Information was accessed and stolen in the Data Breach. Plaintiffs further believe their stolen Private Information was subsequently sold on the Dark Web.

45.    T-Mobile's offer of twenty-four months of complimentary credit monitoring services is an acknowledgement by T-Mobile that the impacted individuals are subject to a present and ongoing threat of fraud and identity theft.

46.    T-Mobile had an obligation created by contract, industry standards, common law, and representations made to Plaintiffs and Class Members to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

47.    Plaintiffs and Class Members provided their Private Information to T-Mobile with the reasonable expectation, and mutual understanding, that T-Mobile would comply with its obligations to keep such information confidential and secure from unauthorized access.

///

CLASS ACTION COMPLAINT
CASE NO.                                                    -10-

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

C.     **For Years T-Mobile Has Known Of The Risks Of A Data Breach**

48.     T-Mobile had obligations created by contract, industry standards, common law, and representations made to Plaintiffs and Members of the Classes, to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

49.     Plaintiffs and Class Members provided their Private Information to T-Mobile with the reasonable expectation and mutual understanding that T-Mobile would comply with its obligations to keep such information confidential and secure from unauthorized access.

50.     T-Mobile's data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches preceding the date of the breach.

51.     Data breaches have become widespread.  For example, the United States saw 1,244 data breaches in 2018 and had 446.5 million exposed records.[20]

52.     T-Mobile clearly understood this reality.  As a quote posted on T-Mobile's website by its Senior Manager of T-Mobile Cyber Architecture & Controls Unit states:

> At T-Mobile, everyone is challenge[d] to think outside of conventional approaches to digital security; all know assumptions are reevaluated.  We work on forward-thinking technologies, including micro-segmentation, machine learning, predictive analytics, web situational awareness, advance threat mitigation, active defense, data obfuscation and next-generation endpoint technologies it.[21]

53.     However, T-Mobile failed to fully implement data security systems and protect critical Private Information belonging to consumers.

54.     Indeed, data breaches, such as the one experienced by T-Mobile, have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a

---

[20] *98 Must-Know Data Breach Statistics for 2021*, Varonis, https://www.varonis.com/blog/data-breach-statistics/#:~:text=In%202020%2C%2098%25%20of%20point,doubled%20since%202019%20(Verizon). (last visited Aug. 20, 2021).

[21] *Digital Security*, T-Mobile, https://www.t-mobile.com/careers/digital-security (last visited Aug. 20, 2021).

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

warning to potential targets, so they are aware of, and prepared for, a potential attack.  Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known and completely foreseeable to the public and to anyone in T-Mobile's industry, including T-Mobile.

55.     According to the Federal Trade Commission ("FTC"), identity theft wreaks havoc on consumers' finances, credit history, and reputation and can take time, money, and patience to resolve.[22]   Identity thieves use stolen personal information for a variety of crimes, including government benefits fraud, phone or utilities fraud, and bank and finance fraud.[23]

56.     The Private Information of Plaintiffs and Members of the Classes was taken by hackers to engage in identity theft or and or to sell it to other criminals who will purchase the Private Information for that purpose.  The fraudulent activity resulting from the Data Breach may not come to light for years.

57.     T-Mobile knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiffs and Members of the Classes, including Social Security numbers, driver's license, and/or dates of birth, and of the foreseeable consequences that would occur if T-Mobile's data security systems were breached, including, specifically, the significant costs that would be imposed on Plaintiffs and Members of the Classes as a result of a breach.

---

[22] *See Taking Charge, What to Do If Your Identity is Stolen*, FTC, 3 (Apr. 2013), https://dss.mo.gov/cd/order-youth-program/files/taking-charge-what-to-do-if-stolen.pdf (last visited Aug. 20, 2021).
[23] *Id.*  The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 CFR § 603.2.  The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."  *See Taking Charge, What To Do If Your Identity Is Stolen*, FTC, 3 (Apr. 2013), https://dss.mo.gov/cd/older-youth-program/files/taking-charge-what-to-do-if-identity-is-stolen.pdf (last visited Aug. 20, 2021).

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

58.     Plaintiffs and Members of the Classes now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights.  The Classes are incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

59.     The injuries to Plaintiffs and Members of the Classes were directly and proximately caused by T-Mobile's failure to implement or maintain adequate data security measures for the Private Information of Plaintiffs and Members of the Classes.

**D.      T-Mobile Failed to Comply with FTC Guidelines**

60.     The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices.  According to the FTC, the need for data security should be factored into all business decision-making.

61.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses.  The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

62.     The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

63.     In fact, the FTC has brought enforcement actions against businesses for failing to protect consumer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45.

64.     T-Mobile was at all times fully aware of its obligations to protect the Private Information of current, former, and prospective customers.  T-Mobile was also aware of the significant repercussions that would result from its failure to do so.

**E.     T-Mobile Also Failed to Comply with Industry Standards**

65.     A number of industry and national best practices have been published and should have been used as a go-to resource and authoritative guide when developing T-Mobile's cybersecurity practices.

66.     Best cybersecurity practices that are standard in T-Mobile's industry include encrypting files; installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protecting physical security systems; protecting against any possible communication system; and training staff regarding critical points.

67.     T-Mobile failed to meet the minimum standards of the following cybersecurity framework: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PR-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established standards in reasonable cybersecurity readiness.

68.     These foregoing frameworks are existing and applicable industry standards in T-Mobile's industry, and T-Mobile failed to comply with these accepted standards, thereby opening the door to the Cyber-Attach and causing the Data Breach.

**F.     T-Mobile's Breach**

69.     T-Mobile breached its obligation to Plaintiffs and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data.  T-Mobile's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

      (a)     Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber attacks;

      (b)     Failing to adequately protect current, former, and prospective customers' Private Information;

      (c)     Failing to properly monitor its own data security systems for intrusions;

      (d)     Failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act, and;

      (e)     Failing to adhere to industry standards for cybersecurity.

70.     T-Mobile negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' Private Information.

71.     Accordingly, as outlined below, Plaintiffs and Class Members now face an increased risk of fraud and identity theft.  In addition, Plaintiffs and Class Members also lost the benefit of the bargain they made with T-Mobile.

///

///

**G.    The Value of Private Information to Cyber Criminal and Increased Risk of Fraud and Identity Theft to Consumers**

72.    Businesses that store personal information are likely to be targeted by cyber criminals. Credit card and bank account numbers are tempting targets for hackers.  However, information such as dates of birth and Social Security numbers are even more attractive to hackers; they are not easily destroyed and can be easily used to perpetrate identity theft and other types of fraud.

73.    The Private Information of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web.  Numerous sources cite dark web pricing for stolen identity credentials.  For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[24]

74.    Social Security numbers, for example, are among the worst kinds of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change.  The Social Security Administration ("SSA") stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you.  Identity thieves can use your number and your good credit to apply for more credit in your name.  Then, they use the credit cards and don't pay the bills, it damages your credit.  You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought.  Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.

75.    What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse.  In other words, preventive action to defend against the possibility of

---

[24] *See Your personal data is for sale on the dark web.  Here's how much it costs*, Data Trends, (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs (last visited Aug. 19, 2021).

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

misuse of a social security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

76.      Even then, a new Social Security number may not be effective.  According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[25]

77.      Moreover, as the SSA warns:

> Keep in mind that a new number probably will not solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) likely will have records under your hold number.  Along with other personal information, credit reporting companies use the numbers to identify your credit record.  So using a new number will not guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.  If you receive a new Social Security Number, you should not be able to use the old number anymore.

> For some victims of identity theft, a new number actually creates new problems. If the hold credit information is not associated with your new number, the absence of any credit history under the new number may make it more difficult for you to get credit.[26]

78.      Here, the unauthorized access left the cyber criminals with the tools to perform the most thorough identity theft—they have obtained all the essential Private Information to mimic the identity of the user.  The personal data of Plaintiffs and Members of the Classes stolen in the Data Breach constitutes a dream for hackers and a nightmare for Plaintiffs and the Classes.

79.      A study by Identity Theft Resource Center shows the multitude of harms caused by fraudulent use of personal and financial information:[27]

---

[25] Bryan Naylor, Victims of Social Security Number Theft Fins It's Hard to Bounce Back, NPR (Feb. 9, 2015), https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last visited Aug. 20, 2021).
[26] *Supra*, note 18.
[27] See Jason Steele, Credit Card and ID Theft Statistics, CreditCards.com (Oct. 23, 2020), https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276.php (last visited Aug. 20, 2021).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16    80.    Stolen personal data of Plaintiffs and Members of the Classes represents essentially

17 one-stop shopping for identity thieves.

18    81.    The FTC has released its updated publication on protecting Private Information for

19 businesses, which includes instructions on protecting Private Information, properly disposing of

20 Private Information, understanding network vulnerabilities, implementing policies to correct security

21

22 problems, using intrusion detection programs, monitoring data traffic, and having in place a response

23 plan.

24    82.    General policy reasons support such an approach.    A person whose personal

25 information has been compromised may not see any signs of identity theft for years.    According to

26 the United States Government Accountability Office ("GAO") Report to Congressional Requesters:

27

28

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[28]

83.    Companies recognize that Private Information is a valuable asset. Indeed, Private Information is a valuable commodity. A "cyber black-market" exists in which criminals openly post stolen Social Security numbers and other Private Information on a number of Internet websites. The stolen personal data of Plaintiffs and members of the Classes has a high value on both legitimate and black markets.

84.    Identity thieves may commit various types of crimes such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, and/or using the victim's information to obtain a fraudulent tax refund or fraudulent unemployment or COVID-19 relief benefits. The United States government and privacy experts acknowledge that it may take years for identity theft to come to light and be detected.

85.    As noted above, the disclosure of Social Security numbers in particular poses a significant risk. Criminals can, for example, use Social Security numbers to create false bank accounts or file fraudulent tax returns. T-Mobile's current, former, and prospective customers who Social Security numbers have been compromised now face a present and imminent risk of identity theft and other problems associated with the disclosure of their Social Security number and will need to monitor their credit and tax filings for an indefinite duration.

86.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data

---

[28] *See* U.S. Gov. Accountability Office, GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (2007) at 29, available at https://www.gao.gov/new.items/d07737.pdf (last visited Aug. 20, 2021).

breach, because, there, victims can cancel or close credit and debit card accounts.  The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security number, driver's license number or government-issued identification number, name, and date of birth.

87.     This data demands a much higher price on the black market.  Martin Walter, Senior Director at cybersecurity firm, RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[29]

88.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

89.     According to a recent article in the New York Times, cyber thieves are using illegally obtained driver's license numbers to submit and fraudulently obtain unemployment benefits.[30]  An individual may not know that his or her driver's license was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud, or until the individual attempts to lawfully apply for unemployment and is denied benefits (due to the prior, fraudulent application and award of benefits).

///

///

///

---

[29] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited Aug. 20, 2021).
[30] *How Identity Thieves Took My Wife for a Ride*, New York Times, (Apr. 27, 2021), https://www.nytimes.com/2021/04/27/your-money/identity-theft-auto-insurance.html (last visited Aug. 19, 2021).

CLASS ACTION COMPLAINT
CASE NO.                                                     -20-
BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

**H.     The Plaintiffs' Experiences**

**1. Plaintiff Timothy Akins**

90.     At the time of opening his cellular telephone account with T-Mobile, Plaintiff Akins was required to provide, among other things, his Social Security Number, driver's license number, first and last name, and physical address.

91.     On or about August 16, 2021, Plaintiff Akins, and the public, was first notified of the Data Breach by T-Mobile and that cybercriminals had illegally accessed and stole confidential customer data from millions of T-Mobile customers' accounts.  In addition, Plaintiff received the August 19, 2021 text message from T-Mobile notifying him that his Private Information was among the confidential data that cybercriminals illegally accessed and stole from T-Mobile's servers.

92.     As a direct and proximate result of the breach, Plaintiff Akins has made reasonable efforts to mitigate the impact of the breach, including but not limited to: conducting research concerning this Data Breach; discussing the breach with his family; reviewing credit reports and financial account statements for any indication of actual or attempted identity theft or fraud; and researching credit monitoring and identity theft protection services offered by T-Mobile.  This is valuable time Plaintiff Akins otherwise could have spent on other activities, including researching investments and looking for ways to make productive use of his financial resources.

93.     Plaintiff Akins is very concerned about identity theft and banking fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

94.     Plaintiff Akins suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his Private Information, a form of property that T-Mobile obtained from Plaintiff Akins; (b) violation of Plaintiff's privacy rights; and (c) present and increased risk arising from the identity theft and fraud.  In fact, Plaintiff Akins has already had suspicious activity

happening on his financial accounts following the Breach.  For example, Plaintiff Akins received a notification of a $200 debit from Transform Credit.  Plaintiff Akins was in no way connected to or responsible for this debit.  Nonetheless, this is now a charge for which he is responsible.  Similarly, using Plaintiff Akins' Private Information, someone attempted to apply for an account with Verizon Wireless.  Each of these activities were done without Plaintiff Akins' permission.

95.     Plaintiff Akins has and will spend a significant amount of time responding to the impacts of the Data Breach.  The time spent dealing with the fallout from the Data Breach is time Plaintiff otherwise would have spent on other activities, such as researching investments and looking for ways to make productive use of his financial resources.

96.     As a result of the Data Breach, Plaintiff Akins anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.  As a result of the Data Breach, Plaintiff is and will continue to be at increased risk of identity theft and fraud for years to come.

### 2.  Plaintiff Tara Millhouse

97.     At the time of opening her cellular telephone account with T-Mobile, Plaintiff Millhouse was required to provide, among other things, her Social Security Number, driver's license number, first and last name, and physical address.

98.     On or about August 16, 2021, Plaintiff Millhouse, and the public, was first notified of the Data Breach by T-Mobile and that cybercriminals had illegally accessed and stole confidential customer data from millions of T-Mobile customers' accounts.  In addition, Plaintiff received the August 19, 2021 text message from T-Mobile notifying her that her Private Information was among the confidential data that cybercriminals illegally accessed and stole from T-Mobile's servers.

99.     As a direct and proximate result of the breach, Plaintiff Millhouse has made reasonable efforts to mitigate the impact of the breach, including but not limited to:  researching the

CLASS ACTION COMPLAINT
CASE NO.                                                -22-

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

internet concerning this Data Breach; discussing the breach with her family; reviewing credit reports and financial account statements for any indication of actual or attempted identity theft or fraud; and researching credit monitoring and identity theft protection services offered by T-Mobile.  This is valuable time Plaintiff Millhouse otherwise could have spent on other activities, including researching investments and looking for ways to make productive use of her financial resources.

100.    Plaintiff Millhouse is very concerned about identity theft and banking fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

101.    Plaintiff Millhouse suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her Private Information, a form of property that T-Mobile obtained from Plaintiff Millhouse; (b) violation of Plaintiff's privacy rights; and (c) present and increased risk arising from the identity theft and fraud.

102.    Plaintiff Millhouse has and will spend a significant amount of time responding to the impacts of the Data Breach.  The time spent dealing with the fallout from the Data Breach is time Plaintiff otherwise would have spent on other activities, such as researching investments and looking for ways to make productive use of her financial resources.

103.    As a result of the Data Breach, Plaintiff Millhouse anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is and will continue to be at increased risk of identity theft and fraud for years to come.

### 3.  Plaintiff Pamela Lane

104.    At the time of opening her cellular telephone account with T-Mobile, Plaintiff Lane was required to provide, among other things, her Social Security Number, driver's license number, first and last name, and physical address.

105.    On or about August 16, 2021, Plaintiff Lane, and the public, was first notified of the Data Breach by T-Mobile and that cybercriminals had illegally accessed and stole confidential customer data from millions of T-Mobile customers' accounts.  In addition, Plaintiff received the August 19, 2021 text message from T-Mobile notifying her that her Private Information was among the confidential data that cybercriminals illegally accessed and stole from T-Mobile's servers.

106.    As a direct and proximate result of the breach, Plaintiff Lane has made reasonable efforts to mitigate the impact of the breach, including but not limited to:  researching the internet concerning this Data Breach; discussing the breach with her family; reviewing credit reports and financial account statements for any indication of actual or attempted identity theft or fraud; and researching credit monitoring and identity theft protection services offered by T-Mobile.  This is valuable time Plaintiff Lane otherwise could have spent on other activities, including researching investments and looking for ways to make productive use of her financial resources.

107.    Plaintiff Lane is very concerned about identity theft and banking fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

108.    Plaintiff Lane suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her Private Information, a form of property that T-Mobile obtained from Plaintiff Millhouse; (b) violation of Plaintiff's privacy rights; and (c) present and increased risk arising from the identity theft and fraud.

109.    Plaintiff Lane has and will spend a significant amount of time responding to the impacts of the Data Breach.  The time spent dealing with the fallout from the Data Breach is time Plaintiff otherwise would have spent on other activities, such as researching investments and looking for ways to make productive use of her financial resources.

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

110.   As a result of the Data Breach, Plaintiff Lane anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.  As a result of the Data Breach, Plaintiff is and will continue to be at increased risk of identity theft and fraud for years to come.

### 4. Plaintiff Cedric Gay

111.   At the time of opening his cellular telephone account with T-Mobile, Plaintiff Gay was required to provide, among other things, his Social Security Number, driver's license number, first and last name, and physical address.

112.   On or about August 16, 2021, Plaintiff Gay, and the public, was first notified of the Data Breach by T-Mobile and that cybercriminals had illegally accessed and stole confidential customer data from millions of T-Mobile customers' accounts.  In addition, Plaintiff received the August 19, 2021 text message from T-Mobile notifying him that his Private Information was among the confidential data that cybercriminals illegally accessed and stole from T-Mobile's servers.

113.   As a direct and proximate result of the breach, Plaintiff Gay has made reasonable efforts to mitigate the impact of the breach, including but not limited to:  researching the internet concerning this Data Breach; discussing the breach with his family; reviewing credit reports and financial account statements for any indication of actual or attempted identity theft or fraud; and researching credit monitoring and identity theft protection services offered by T-Mobile.  This is valuable time Plaintiff Gay otherwise could have spent on other activities, including researching investments and looking for ways to make productive use of his financial resources.  Additionally, following the data breach, Plaintiff Gay has had numerous incidents of suspicious activity on his financial accounts, including unauthorized debits for which he is now responsible.

114.   Plaintiff Gay is very concerned about identity theft and banking fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

115.     Plaintiff Gay suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his Private Information, a form of property that T-Mobile obtained from Plaintiff Gay; (b) violation of Plaintiff's privacy rights; and (c) present and increased risk arising from the identity theft and fraud.

116.     Plaintiff Gay has and will spend a significant amount of time responding to the impacts of the Data Breach.  The time spent dealing with the fallout from the Data Breach is time Plaintiff otherwise would have spent on other activities, such as researching investments and looking for ways to make productive use of his financial resources.

117.     As a result of the Data Breach, Plaintiff Gay anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.  As a result of the Data Breach, Plaintiff is and will continue to be at increased risk of identity theft and fraud for years to come.

### 5. Plaintiff Lori Williams

118.     At the time of opening her cellular telephone account with T-Mobile, Plaintiff Williams was required to provide, among other things, her Social Security Number, driver's license number, first and last name, and physical address.

119.     On or about August 16, 2021, Plaintiff Williams, and the public, was first notified of the Data Breach by T-Mobile and that cybercriminals had illegally accessed and stole confidential customer data from millions of T-Mobile customers' accounts.  In addition, Plaintiff received the August 19, 2021 text message from T-Mobile notifying her that her Private Information was among the confidential data that cybercriminals illegally accessed and stole from T-Mobile's servers.

120.     As a direct and proximate result of the breach, Plaintiff Williams has made reasonable efforts to mitigate the impact of the breach, including but not limited to:  researching the internet

CLASS ACTION COMPLAINT
CASE NO.                                    -26-

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

concerning this Data Breach; discussing the breach with her family; reviewing credit reports and financial account statements for any indication of actual or attempted identity theft or fraud; and researching credit monitoring and identity theft protection services offered by T-Mobile.  This is valuable time Plaintiff Williams otherwise could have spent on other activities, including researching investments and looking for ways to make productive use of her financial resources.

121.    Plaintiff Williams is very concerned about identity theft and banking fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

122.    Plaintiff Williams suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her Private Information, a form of property that T-Mobile obtained from Plaintiff Williams; (b) violation of Plaintiff's privacy rights; and (c) present and increased risk arising from the identity theft and fraud.

123.    Plaintiff Williams has and will spend a significant amount of time responding to the impacts of the Data Breach.  The time spent dealing with the fallout from the Data Breach is time Plaintiff otherwise would have spent on other activities, such as researching investments and looking for ways to make productive use of her financial resources.

124.    As a result of the Data Breach, Plaintiff Williams anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is and will continue to be at increased risk of identity theft and fraud for years to come.

### 6. Plaintiff Bryan Morton

125.    At the time of opening his cellular telephone account with T-Mobile, Plaintiff Morton was required to provide, among other things, his Social Security Number, driver's license number, first and last name, and physical address.

126.    On or about August 16, 2021, Plaintiff Morton, and the public, was first notified of the Data Breach by T-Mobile and that cybercriminals had illegally accessed and stole confidential customer data from millions of T-Mobile customers' accounts.  In addition, Plaintiff received the August 19, 2021 text message from T-Mobile notifying him that his Private Information was among the confidential data that cybercriminals illegally accessed and stole from T-Mobile's servers.

127.    As a direct and proximate result of the breach, Plaintiff Morton has made reasonable efforts to mitigate the impact of the breach, including but not limited to:  researching the internet concerning this Data Breach; discussing the breach with his family; reviewing credit reports and financial account statements for any indication of actual or attempted identity theft or fraud; and researching credit monitoring and identity theft protection services offered by T-Mobile.  This is valuable time Plaintiff Morton otherwise could have spent on other activities, including researching investments and looking for ways to make productive use of his financial resources.

128.    Plaintiff Morton is very concerned about identity theft and banking fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

129.    Plaintiff Morton suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his Private Information, a form of property that T-Mobile obtained from Plaintiff Morton; (b) violation of Plaintiff's privacy rights; and (c) present and increased risk arising from the identity theft and fraud.

130.    Plaintiff Morton has and will spend a significant amount of time responding to the impacts of the Data Breach.  The time spent dealing with the fallout from the Data Breach is time Plaintiff otherwise would have spent on other activities, such as researching investments and looking for ways to make productive use of his financial resources.

131.    As a result of the Data Breach, Plaintiff Morton anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is and will continue to be at increased risk of identity theft and fraud for years to come.

**7. Plaintiff Sajan George**

132.    At the time of opening his cellular telephone account with T-Mobile, Plaintiff George was required to provide, among other things, his Social Security Number, driver's license number, first and last name, and physical address.

133.    On or about August 16, 2021, Plaintiff George, and the public, was first notified of the Data Breach by T-Mobile and that cybercriminals had illegally accessed and stole confidential customer data from millions of T-Mobile customers' accounts.  In addition, Plaintiff received the August 19, 2021 text message from T-Mobile notifying him that his Private Information was among the confidential data that cybercriminals illegally accessed and stole from T-Mobile's servers.

134.    As a direct and proximate result of the breach, Plaintiff George has made reasonable efforts to mitigate the impact of the breach, including but not limited to:  researching the internet concerning this Data Breach; discussing the breach with his family; reviewing credit reports and financial account statements for any indication of actual or attempted identity theft or fraud; and researching credit monitoring and identity theft protection services offered by T-Mobile.  This is valuable time Plaintiff George otherwise could have spent on other activities, including researching investments and looking for ways to make productive use of her financial resources.

135.    Plaintiff George is very concerned about identity theft and banking fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

136.    Plaintiff George suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and

diminution in the value of his Private Information, a form of property that T-Mobile obtained from Plaintiff George; (b) violation of Plaintiff's privacy rights; and (c) present and increased risk arising from the identity theft and fraud.

137.    Plaintiff George has and will spend a significant amount of time responding to the impacts of the Data Breach.  The time spent dealing with the fallout from the Data Breach is time Plaintiff otherwise would have spent on other activities, such as researching investments and looking for ways to make productive use of his financial resources.

138.    As a result of the Data Breach, Plaintiff George anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is and will continue to be at increased risk of identity theft and fraud for years to come.

### 8. Plaintiff Cynthia Halton

139.    At the time of opening her cellular telephone account with T-Mobile, Plaintiff Halton was required to provide, among other things, her Social Security Number, driver's license number, first and last name, and physical address.

140.    On or about August 16, 2021, Plaintiff Halton, and the public, was first notified of the Data Breach by T-Mobile and that cybercriminals had illegally accessed and stole confidential customer data from millions of T-Mobile customers' accounts.  In addition, Plaintiff received the August 19, 2021 text message from T-Mobile notifying her that her Private Information was among the confidential data that cybercriminals illegally accessed and stole from T-Mobile's servers.

141.    As a direct and proximate result of the breach, Plaintiff Halton has made reasonable efforts to mitigate the impact of the breach, including but not limited to:  researching the internet concerning this Data Breach; discussing the breach with her family; reviewing credit reports and financial account statements for any indication of actual or attempted identity theft or fraud; and

researching credit monitoring and identity theft protection services offered by T-Mobile. This is valuable time Plaintiff Halton otherwise could have spent on other activities, including researching investments and looking for ways to make productive use of her financial resources.

142. Plaintiff Halton is very concerned about identity theft and banking fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

143. Plaintiff Halton suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her Private Information, a form of property that T-Mobile obtained from Plaintiff Halton; (b) violation of Plaintiff's privacy rights; and (c) present and increased risk arising from the identity theft and fraud.

144. Plaintiff Halton has and will spend a significant amount of time responding to the impacts of the Data Breach. The time spent dealing with the fallout from the Data Breach is time Plaintiff otherwise would have spent on other activities, such as researching investments and looking for ways to make productive use of her financial resources.

145. As a result of the Data Breach, Plaintiff Halton anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is and will continue to be at increased risk of identity theft and fraud for years to come.

**9. Plaintiff Sean Jordan**

146. At the time of opening his cellular telephone account with T-Mobile, Plaintiff Jordan was required to provide, among other things, his Social Security Number, driver's license number, first and last name, and physical address.

147. On or about August 16, 2021, Plaintiff Jordan, and the public, was first notified of the Data Breach by T-Mobile and that cybercriminals had illegally accessed and stole confidential

customer data from millions of T-Mobile customers' accounts.  In addition, Plaintiff received the August 19, 2021 text message from T-Mobile notifying him that his Private Information was among the confidential data that cybercriminals illegally accessed and stole from T-Mobile's servers.

148.    As a direct and proximate result of the breach, Plaintiff Jordan has made reasonable efforts to mitigate the impact of the breach, including but not limited to:  researching the internet concerning this Data Breach; discussing the breach with his family; reviewing credit reports and financial account statements for any indication of actual or attempted identity theft or fraud; and researching credit monitoring and identity theft protection services offered by T-Mobile.  This is valuable time Plaintiff Jordan otherwise could have spent on other activities, including researching investments and looking for ways to make productive use of his financial resources.

149.    Plaintiff Jordan is very concerned about identity theft and banking fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

150.    Plaintiff Jordan suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his Private Information, a form of property that T-Mobile obtained from Plaintiff Jordan; (b) violation of Plaintiff's privacy rights; and (c) present and increased risk arising from the identity theft and fraud.

151.    Plaintiff Jordan has and will spend a significant amount of time responding to the impacts of the Data Breach.  The time spent dealing with the fallout from the Data Breach is time Plaintiff otherwise would have spent on other activities, such as researching investments and looking for ways to make productive use of his financial resources.

152.    As a result of the Data Breach, Plaintiff Jordan anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.  As

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

a result of the Data Breach, Plaintiff is and will continue to be at increased risk of identity theft and fraud for years to come.

### 10. Plaintiff Terri Marble

153.    At the time of opening her cellular telephone account with T-Mobile, Plaintiff Marble was required to provide, among other things, her Social Security Number, driver's license number, first and last name, and physical address.

154.    On or about August 16, 2021, Plaintiff Marble, and the public, was first notified of the Data Breach by T-Mobile and that cybercriminals had illegally accessed and stole confidential customer data from millions of T-Mobile customers' accounts.  In addition, Plaintiff received the August 19, 2021 text message from T-Mobile notifying her that her Private Information was among the confidential data that cybercriminals illegally accessed and stole from T-Mobile's servers.

155.    As a direct and proximate result of the breach, Plaintiff Marble has made reasonable efforts to mitigate the impact of the breach, including but not limited to:  researching the internet concerning this Data Breach; discussing the breach with her family; reviewing credit reports and financial account statements for any indication of actual or attempted identity theft or fraud; and researching credit monitoring and identity theft protection services offered by T-Mobile.  This is valuable time Plaintiff Marble otherwise could have spent on other activities, including researching investments and looking for ways to make productive use of her financial resources.

156.    Plaintiff Marble is very concerned about identity theft and banking fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

157.    Plaintiff Marble suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her Private Information, a form of property that T-Mobile obtained from

CLASS ACTION COMPLAINT
CASE NO.                                                -33-

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

Plaintiff Marble; (b) violation of Plaintiff's privacy rights; and (c) present and increased risk arising from the identity theft and fraud.

158.    Plaintiff Marble has and will spend a significant amount of time responding to the impacts of the Data Breach.  The time spent dealing with the fallout from the Data Breach is time Plaintiff otherwise would have spent on other activities, such as researching investments and looking for ways to make productive use of her financial resources.

159.    As a result of the Data Breach, Plaintiff Marble anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is and will continue to be at increased risk of identity theft and fraud for years to come.

**I.    Plaintiffs' and Class Members' Damages**

160.    To date, T-Mobile has done absolutely nothing to provide Plaintiffs and Class Members with relief for the damages they have suffered because of the Data Breach, including, but not limited to, the costs and loss of time they incurred because of the Data Breach.

161.    T-Mobile has only offered inadequate monitoring services.  T-Mobile places the burden squarely on Plaintiffs and Class Members by requiring them to expend time signing up for that service, as opposed to automatically enrolling all victims of this cybercrime.  In addition, T-Mobile only offers these services for two years, even though experts agree that the effect of such a data breach can often be felt by victims for approximately seven years.

162.    Plaintiffs' and Class Members' Private Information was compromised as a direct and proximate result of the Data Breach.

163.    As a direct and proximate result of T-Mobile's conduct, Plaintiffs and Class Members are in imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

164.    As a direct and proximate result of T-Mobile's conduct, Plaintiffs and Class Members have been forced to expend time dealing with the effects of the Data Breach.

165.    Plaintiffs and Class Members face a present and substantial risk of out-of-pocket fraud losses such as loans opened in their names, government benefits fraud, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

166.    As Plaintiffs Akins' and Gay's experience demonstrates, Plaintiffs and Class Members face a present and substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to target such schemes more effectively to Plaintiffs and Class Members.

167.    As Plaintiffs Akins' and Gay's experience demonstrates, Plaintiffs and Class Members have and may continue to incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

168.    Plaintiffs and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

169.    Plaintiffs and Class Members have spent and will continue to spend significant amounts of time monitoring their financial accounts for misuse. Indeed, T-Mobile's own Notice of Data Breach page posted on its website states that the stolen data is in "harm's way" and encourages Plaintiffs and Class Members to "take proactive steps regularly to protect your data and identity[.]"[31]

170.    Plaintiffs and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket

---

[31] *Notice of Data Breach: Keeping You Safe from Cybersecurity Threats*, T-Mobile (Aug. 19, 2021), https://www.t-mobile.com/brand/data-breach-2021 (last visited Aug. 19, 2021).

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data

Breach relating to:

>    (a)    Finding fraudulent charges, loans, and/or government benefit claims;
>
>    (b)    Purchasing credit monitoring and identity theft prevention services;
>
>    (c)    Placing "freezes" and "alerts" with credit reporting agencies;
>
>    (d)    Spending time on the phone with or at a financial institution or
>           government agency to dispute fraudulent charges and/or claims;
>
>    (e)    Contacting financial institutions and closing or modifying accounts;
>
>    (f)    Closely reviewing and monitoring Social Security numbers, bank
>           accounts, and credit reports for unauthorized activity for years to come.

171.    Furthermore, Plaintiffs and Class Members have an interest in ensuring that their

Private Information, which is believed to remain in the possession of T-Mobile, is protected from

further breaches by the implementation of security measures and safeguards, including but not

limited to, making sure that the storage of data or documents containing personal and financial

information is not accessible online, that access to such data is password-protected, and that such

data is properly encrypted.

172.    To date, T-Mobile has done absolutely nothing to provide Plaintiffs and Class

Members with relief for the damages they have suffered because of the Data Breach, including, but

not limited to, the costs and loss of time they incurred because of the Data Breach.

173.    T-Mobile has only offered inadequate identity monitoring services, and it is unclear

whether that credit monitoring was only offered to certain affected individuals (based upon the type

of data stolen), or to all persons whose data was compromised in the Data Breach. What is more,

Defendant places the burden squarely on Plaintiffs and Class members by requiring them to expend

time signing up for that service, as opposed to automatically enrolling all victims of this cybercrime.

# CLASS ALLEGATIONS

174.    Plaintiffs bring this nationwide class action pursuant to 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all members of the following class:

> All current, former, and prospective T-Mobile customers residing in the United States and whose private information was compromised in the Data Breach announced by T-Mobile on or about August 16, 2021 (the "Nationwide Class").

175.    The California Subclass is defined as follows:

> All current, former, and prospective T-Mobile customers residing in California whose Private Information was compromised in the Data Breach announced by T-Mobile on or about August 16, 2021 (the "California Subclass").

176.    The Florida Subclass is defined as follows:

> All current, former, and prospective T-Mobile customers residing in Florida whose Private Information was compromised in the Data Breach announced by T-Mobile on or about August 16, 2021 (the "Florida Subclass").

177.    The New York Subclass is defined as follows:

> All current, former, and prospective T-Mobile customers residing in New York whose Private Information was compromised in the Data Breach announced by T-Mobile on or about August 16, 2021 (the "New York Subclass").

178.    The Washington Subclass is defined as follows:

> All current, former, and prospective T-Mobile customers residing in Washington whose Private Information was compromised in the Data Breach announced by T-Mobile on or about August 16, 2021 (the "Washington Subclass").

179.    The California, Florida, New York, and Washington Subclasses (together the "Statewide Subclasses") and together with the Nationwide Class, are collectively referred to herein as the "Classes."

180.    Excluded from the Classes are all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out, and all judges assigned to hear any aspect of this litigation, and their immediate family members.

181.    Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

182.    **Numerosity:**    The Classes are so numerous that joinder of all members is impracticable.   Defendant has identified millions of current, former, and prospective customers whose Private Information may have been improperly accessed in the Data Breach, and the Classes are apparently identifiable within T-Mobile's records.

183.    **Commonality:**    Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual members of the Classes.  There include:

(a)    When T-Mobile actually learned of the Data Breach and whether its response was adequate;

(b)    Whether T-Mobile owed a duty to the Classes to exercise due care in collecting, storing, safeguarding and/or obtaining their Private Information;

(c)    Whether T-Mobile breached that duty;

(d)    Whether T-Mobile implemented and maintained reasonable security procedures and practices appropriate to the nature of storing the Privation Information of Plaintiffs and Members of the Classes;

(e)    Whether T-Mobile acted negligently in connection with the monitoring and/or protection of Private Information belonging to Plaintiffs and Members of the Classes;

(f)    Whether T-Mobile knew or should have known that it did not employ reasonable measures to keep the Private Information of Plaintiffs and Members of the Classes secure and to prevent loss or misuse of that Private Information;

(g)    Whether T-Mobile adequately addressed and fixed their vulnerabilities

which permitted the Data Breach to occur;

(h) Whether T-Mobile caused Plaintiffs' and Members of the Classes damages;

(i) Whether T-Mobile violated the law by failing to promptly notify Plaintiffs and Members of the Classes that their Private Information had been compromised;

(j) Whether T-Mobile violated the consumer protection statutes invoked below; and

(k) Whether Plaintiffs and the other Members of the Classes are entitled to credit monitoring and other monetary relief.

184. **Typicality:** Plaintiffs' claims are typical of those of the other Members of the Classes because all had their Private Information compromised as a result of the Data Breach due to T-Mobile's misfeasance.

185. **Adequacy:** Plaintiffs will fairly and adequately represent and protect the interests of the members of the Classes. Plaintiff's Counsel are competent and experienced in litigating privacy-related class actions and intend to vigorously prosecute this action.

186. **Superiority and Manageability:** Under Rule 23(b)(3) of the Federal Rules of Civil Procedure, a class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the Classes is impracticable. Individual damages for any individual member of the Classes are likely to be insufficient to justify the cost of individual litigation, so that in the absence of class treatment, T-Mobile's misconduct would go unpunished. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

187.    Class certification is also appropriate under Rule 23(a) and (b)(2) because T-Mobile acted or refused to act on grounds generally applicable to the Classes, so that final injunctive relief or corresponding declaratory ~~relied~~relief is appropriate as to the Nationwide Class as a whole and as to the Subclass as a whole.

188.    Likewise, under particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interest therein.  Such particular issues include, but are not limited to:

(a)    Whether T-Mobile owed a legal duty to Plaintiffs and Members of the Classes to exercise due care in collecting, storing, using, and safeguarding their Private Information;

(b)    Whether T-Mobile breached a legal duty to Plaintiffs and Members of the Classes to exercise due care in collecting, storing, using, and safeguarding their Private Information;

(c)    Whether T-Mobile failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

(d)    Whether T-Mobile failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach; and

(e)    Whether members of the Classes are entitled to actual damages, credit monitoring or other injunctive relief, and/or punitive damages as a result of T-Mobile's wrongful conduct.

## COUNT I

### Negligence

189.    Plaintiffs reallege and reincorporate by reference herein all paragraphs alleged above.

190.    Plaintiffs bring this claim individually and on behalf of all members of the Nationwide Class and Statewide Subclasses.

191.    T-Mobile owed a common law duty to Plaintiffs and Members of the Classes to exercise reasonable care in obtaining, using, and protecting their Private Information from unauthorized third parties.

192.    The legal duties owed by T-Mobile to Plaintiffs and Members of the Classes include, but are not limited to the following:

> (a)    To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information of Plaintiffs and Members of the Classes in its possession;

> (b)    To protect Private Information of Plaintiffs and Members of the Classes in its possession using reasonable and adequate security procedures that are compliant with industry-standard practices; and

> (c)    To implement processes to quickly detect a data breach and to timely act on warnings about data breaches, including promptly notifying Plaintiffs and Members of the Classes of the Data Breach

193.    T-Mobile's duty to use reasonable data security measures also arose under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a) (the "FTC Act"), which prohibits "unfair . . . practices in or affecting commerce," including, as interested and enforced by the Federal Trade Commission, the unfair practices by companies such T-Mobile of failing to use reasonable measures to protect Private Information.

194.    Various FTC publications and data security breach orders further form the basis of T-Mobile's duty.  Plaintiffs and Members of the Classes are consumers under the FTC Act.  T-Mobile violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and by not complying with industry standards.

195.    T-Mobile breached its duties to Plaintiffs and Members of the Classes.  T-Mobile knew or should have known the risks of collecting and storing Private Information and the importance of maintain secure systems, especially in light of the fact that data breaches have been surging in the past 5 years.

196.    T-Mobile knew or should have known that its security practices did not adequately safeguard the Private Information belonging to the Plaintiffs and Members of the Classes.

197.    Through T-Mobile's acts and omissions described in this Complaint, including Defendant's failure to provide adequate security and its failure to protect the Private Information of Plaintiffs and Members of the Classes from being foreseeably captured, accessed, siphoned, stolen, disclosed, and misused, T-Mobile unlawfully breached its duty to use reasonable care to adequately protect and secure the Private Information of Plaintiffs and Members of the Classes during the period it was within T-Mobile's possession and control.

198.    T-Mobile breached the duties it owed to Plaintiffs and Members of the Classes in several ways, including:

(a)    Failing to implement adequate security systems, protocols, and practices sufficient to protect current, former, and prospective customers' Private Information, including Plaintiffs and Members of the Classes, and thereby creating a foreseeable risk of harm;

(b)    Failing to comply with the minimum industry data security standards prior to the Data Breach;

CLASS ACTION COMPLAINT
CASE NO.                                                    -42-

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

(c)      Failing to act despite knowing or having reason to know that its systems were vulnerable to attack; and

199.    Due to T-Mobile's conduct, Plaintiffs and Members of the Classes are entitled to credit monitoring.  Credit monitoring is reasonable here.  The Private Information taken can be used for identity theft and other types of financial fraud against Plaintiffs and Members of the Classes.

200.    Some experts recommend that data breach victims obtain credit monitoring services for at least ten years following a data breach.  Annual subscriptions for credit monitoring plans range from approximately $219 to $358 per year.[32]

201.    As a result of T-Mobile's negligence, Plaintiffs and Members of the Class suffered injuries that may include: (i) the lost of diminished value of Private Information; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including, but not limited to, time spent deleting phishing scams and reviewing and monitoring sensitive accounts; (iv) the present and continued risk to their Private Information, which may remain for sale on the dark web and is in T-Mobile's possession and subject to further unauthorized disclosures so long as T-Mobile fails to undertake appropriate and adequate measures to protect the Private Information in their continue possession; and (v) future costs in terms of time, effort, and money that will be expended to prevent, monitor, detect, content, and repair the impact of the Data Breach for the remainder of the lives of Plaintiffs and Members of the Classes, including ongoing credit monitoring.

202.    These injuries were reasonably foreseeable given the history of security breaches of

---

[32] In the recent Equifax data breach, for example, Equifax agreed to free monitoring of victims' credit reports to all three major credit bureaus for four years, plus $1 million of identity theft insurance. For an additional six years, victims can opt for free monitoring by one credit bureau, Equifax.  In addition, if a victim's child was a minor in May 2017, he or she is eligible for a total of 18 years of free credit monitoring under the same terms as for adults.

CLASS ACTION COMPLAINT
CASE NO.                                    -43-

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

this nature.  The injury and harm that Plaintiffs and the members of the Classes suffered was the direct and proximate result of T-Mobile's negligent conduct.

### COUNT II

### Negligence *Per Se*

203.    Plaintiffs reallege and reincorporate by reference herein all paragraphs alleged above.

204.    Plaintiffs bring this claim individually and on behalf of all members of the Nationwide Class and Statewide Subclasses.

205.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as T-Mobile's, of failing to use reasonable measures to protect Private Information.  The FTC publications and orders described above also form part of the basis of T-Mobile's duty in this regard.

206.    T-Mobile violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards.  T-Mobile's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored, and the foreseeable consequences of the Data Breach for companies of T-Mobile's magnitude, including, specifically, the immense damages that would result to Plaintiffs and Members of the Classes due to the value nature of the Private Information at issue in this case – including Social Security numbers.

207.    T-Mobile's violations of Section 5 of the FTC Act constitute negligence per se.

208.    Plaintiffs and Members of the Classes are within the class of persons that the FTC Act was intended to protect.

209.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against.  The FTC has pursued enforcement actions against businesses, which, as a result of ~~thier~~their failure to employ reasonable data security measures and avoid unfair and

CLASS ACTION COMPLAINT
CASE NO.                                        -44-
BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

deceptive practices, caused the same harm as that suffered by Plaintiffs and Members of the Classes.

210.    As a direct and proximate result of T-Mobile's negligence per se, Plaintiffs and Members of the Classes have suffered and will suffer injury, including but not limited to: (i) the lost of diminished value of Private Information; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including, but not limited to, time spent deleting phishing scams and reviewing and monitoring sensitive accounts; (iv) the present and continued risk to their Private Information, which may remain for sale on the dark web and is in T-Mobile's possession and subject to further unauthorized disclosures so long as T-Mobile fails to undertake appropriate and adequate measures to protect the Private Information in their continue possession; and (v) future costs in terms of time, effort, and money that will be expended to prevent, monitor, detect, content, and repair the impact of the Data Breach for the remainder of the lives of Plaintiffs and Members of the Classes, including ongoing credit monitoring.

211.    Additionally, as a direct and proximate result of T-Mobile's negligence per se, Plaintiffs and Members of the Classes have suffered and will suffer the continued risks of exposure of their Private Information, which remains in T-Mobile's possession and is subject to further unauthorized disclosures so long as T-Mobile fails to undertake appropriate and adequate measures to protect the Private Information in their continued possession.

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

## COUNT III

### Breach of Implied Contract

212.    Plaintiffs reallege and reincorporate by reference herein all paragraphs alleged above.

213.    Plaintiffs bring this claim individually and on behalf of all members of the Nationwide Class and Statewide Subclasses.

214.    T-Mobile provides Plaintiffs and Members of the Classes with an implied contract to protect and keep confidential T-Mobile's current, former, and prospective customers' private, non-public personal and financial information when they gathered the information from each of their current, former, and prospective customers.

215.    Plaintiffs and Members of the Classes would not have provided their personal and financial information to T-Mobile, but for T-Mobile's implied promises to safeguard and protect T-Mobile's current, former, and prospective customers private personal and financial information.

216.    Plaintiffs and Members of the Classes performed their obligations under the implied contract when they provided their private personal and financial information in exchange for telecommunications services provided by T-Mobile.

217.    T-Mobile breached the implied contracts with Plaintiffs and Class Members by failing to protect and keep private the nonpublic personal and financial information provided to them about Plaintiffs and Class Members.

218.    As a direct and proximate result of T-Mobile's breach of their implied contracts, Plaintiffs and Members of the Classes have been harmed and have suffered, and will continue to suffer, damages, and injuries.

## COUNT IV

**Violation of the Washington State Consumer Protection Act,**

**RCW 19.86.010, *et seq.***

219.    Plaintiffs reallege and reincorporate by reference herein all paragraphs alleged above.

220.    Plaintiffs bring this claim individually and on behalf of all members of the Nationwide Class and Statewide Subclasses.

221.    The Washington State Consumer Protection Act, RCW 19.86.020 (the "CPA") prohibits any "unfair or deceptive acts or practices" in the conduct of any trade or commerce as those terms are described by the CPA and relevant case law.

222.    T-Mobile is a "person" as described in RWC 19.86.010(1).

223.    T-Mobile engages in "trade" or "commerce" as described in RWC 19.86.010(2) in that it engages in selling telecommunication products and services, that directly and indirectly affect the people of the State of Washington.

224.    By virtue of the above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, T-Mobile engaged in unlawful, unfair and fraudulent practices within the meaning, and in violation of, the CPA, in that T-Mobile's practices were injurious to the public interest because they injured other persons, had the capacity to injure other persons, and have the capacity to injure other persons.

225.    In the course of conducting its business, T-Mobile committed "unfair or deceptive acts or practices" by, inter alia, knowingly failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiffs and Class Members' Private Information, and violating the common law as alleged herein in the process. Plaintiffs and Class Members reserve the right to allege other violations of law by T-Mobile

constituting other unlawful business acts or practices. T-Mobile's above-described wrongful actions, inaction, omissions, and want of ordinary care are ongoing and continue to this date.

226. The gravity of T-Mobile's wrongful conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further T-Mobile's legitimate business interests other than engaging in the above-described wrongful conduct.

227. As a direct and proximate result of T-Mobile's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach and its violations of the CPA, Plaintiffs and Class Members have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, inter alia, (1) an imminent, immediate and the continuing increased risk of identity theft, identity fraud and medical fraud—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (2) invasion of privacy; (3) breach of the confidentiality of their Private Information; (4) deprivation of the of their Private Information, for which there is a well-established national and international market; and/or (5) the financial and temporal cost of monitoring credit, monitoring financial accounts, and mitigating damages.

228. Unless restrained and enjoined, T-Mobile will continue to engage in the above-described wrongful conduct and more data breaches will occur. Plaintiffs, therefore, on behalf of themselves, Class Members, and the general public, also seek restitution and an injunction prohibiting T-Mobile from continuing such wrongful conduct, and requiring T-Mobile to modify its corporate culture and design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect the Private Information entrusted to it.

229. Plaintiffs, on behalf of themselves and the Class Members also seek to recover actual damages sustained by each class member together with the costs of the suit, including reasonable

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

1     attorney fees.  In addition, the Plaintiffs, on behalf of themselves and the Class Members request that

2     this Court use its discretion, pursuant to RCW 19.86.090, to increase the damages award for each

3     Class Member by three times the actual damages sustained not to exceed $25,000.00 per class

4     member.

5

6                                   **COUNT V**

7                                **Unjust Enrichment**

8     230.    Plaintiffs reallege and reincorporate by reference herein all paragraphs alleged above.

9     231.    Plaintiffs bring this claim individually and on behalf of all members of the Nationwide

10    Class and Statewide Subclasses.

11

12    232.    T-Mobile benefited from receiving Plaintiffs' and Members of the Classes' Private

13    Information by its ability to retain and use that information for its own benefit.  T-Mobile understood

14    this benefit.

15    233.    T-Mobile also understood and appreciated that Plaintiffs and Members of the Classes'

16    Private Information was private and confidential, and its value depended upon T-Mobile maintaining

17    the privacy and confidentiality of that Private Information.

18

19    234.    Plaintiffs' and Members of the Classes who were customers of T-Mobile conferred a

20    monetary benefit upon T-Mobile in the form of monies paid for services available from T-Mobile.

21    235.    T-Mobile appreciated or had knowledge of the benefits conferred upon them by

22    Plaintiffs and members of the Classes.  T-Mobile also benefitted from the receipt of Plaintiffs' and

23    members of the Classes' private Information, as T-Mobile used it to facilitate the transfer of Private

24    Information between parties.

25    236.    The monies that Plaintiffs' and Members of the Classes paid to T-Mobile for services

26    were to be used by T-Mobile, in part, to pay for the administrative costs of reasonable data privacy

27    and security practices and procedures.

28

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

237.    T-Mobile also understood and appreciated that Plaintiffs' and Members of the Classes' Private Information was private and confidential, and its value depended upon T-Mobile maintaining the privacy and confidentiality of that Private Information.

238.    But for T-Mobile's willingness and commitment to maintain privacy and confidentiality, that Private Information would not have been transferred to and entrusted with T-Mobile.  Indeed, if T-Mobile had informed Plaintiffs' and Members of the Classes that their data and cyber security measures were inadequate, T-Mobile would not have been permitted to continue to operate in that fashion by regulators, its shareholders, and its consumers.

239.    As a result of T-Mobile's wrongful conduct, T-Mobile was unjustly enriched at the expense of, and to the detriment of, Plaintiffs' and Members of the Classes.  T-Mobile continues to benefit and profit from their retention and use of the Private Information while its value to Plaintiffs' and Members of the Classes has been diminished.

240.    T-Mobile's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged in this Complaint, including compiling, using, and retaining Plaintiffs' and Members of the Classes' Private Information, while at the same time failing to maintain that information secured from intrusion and theft by hackers and identity thieves.

241.    As a result of T-Mobile's conduct, Plaintiffs' and Members of the Classes suffered actual damages in an amount equal to the difference in value between the amount Plaintiffs' and Members of the Classes paid for their purchases with reasonable data privacy and security practices and procedures and the purchases they actually received with unreasonable data privacy and security practices and procedures.

242.    Under principals of equity and good conscience, T-Mobile should not be permitted to retain the money belonging to Plaintiffs' and Members of the Classes because T-Mobile failed to implement (or adequately implement) the data privacy and security practices and procedures that

Plaintiffs' and Members of the Classes paid for and that were otherwise mandated by federal, state, and local laws and industry standards.

243.    T-Mobile should be compelled to disgorge into a common fund for the benefit of Plaintiffs and Members of the Classes all unlawful or inequitable proceeds they received as a result of the conduct alleged herein.

## COUNT VI

### Breach of Fiduciary Duty

244.    Plaintiffs reallege and reincorporate by reference herein all paragraphs alleged above.

245.    Plaintiffs bring this claim individually and on behalf of all members of the Nationwide Class and Statewide Subclasses.

246.    In light of the special relationship between T-Mobile and Plaintiffs and Class Members, where T-Mobile became guardians of Plaintiffs' and Class Members' Personal Information, T-Mobile became a fiduciary by its undertaking and guardianship of the Personal Information, to act primarily for the benefit of T-Mobile's customers, including Plaintiffs and Class Members, (1) for the safeguarding of Plaintiffs' and Class Members' Personal Information; (2) to timely notify Plaintiffs and Class Members of a data breach and disclosure; and (3) maintain complete and accurate records of what information (and where) T-Mobile did and does store this information.

247.    T-Mobile has a fiduciary duty to act for the benefit of Plaintiffs and Class Members upon matters within the scope of its relationship with its customers and, in particular, to keep secure their Personal Information.

248.    T-Mobile breached its fiduciary duties to Plaintiffs and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period of time.

249.    T-Mobile breached its fiduciary duties to Plaintiffs and Class Member by failing to encrypt and otherwise protect the integrity of the systems containing Plaintiffs' and Class Member's Personal Information.

250.    T-Mobile breached its fiduciary duties owed to Plaintiffs and Class Members by failing to timely notify and/or warn Plaintiffs and Class Members of the Data Breach.

251.    T-Mobile breached its fiduciary duties to Plaintiffs and Class Members by otherwise failing to safeguard Plaintiffs' and Class Members' Personal Information.

252.    As a direct and proximate result of T-Mobile's breaches of their fiduciary duties, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their Personal Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Personal Information; (iv) lost opportunity costs associated with the efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recovery from identity theft; (v) the continued risk of their Personal Information, which remains in T-Mobile's possession and is subject to further unauthorized disclosures so long as T-Mobile fails to undertake appropriate and adequate measures to protect the Personal Information in their continued possession; (vi) future costs in terms of time, effort, and money that will be expended as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members; and (vii) the diminished value of Defendant's services they received.

253.    As a direct and proximate result of T-Mobile's breaches of their fiduciary duties, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

### COUNT VII

**Violation of California's Consumer Legal Remedies Act,**
**Cal. Civ. Code § 1750, *et seq*.**

**(Injunctive Relief Only)**

254.    Plaintiffs reallege and reincorporate by reference herein all paragraphs alleged above.

255.    Plaintiffs Akins, Lane, and Millhouse bring this claim individually and on behalf of Members of the California Subclass.

256.    T-Mobile's conduct constitutes violations under California's Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*. (the "CLRA").

257.    T-Mobile's conduct falls within the meaning of this statute because it caused transactions resulting in the sale or lease of goods or services to consumers – namely, the sale of cellular products and services to consumers, such as Plaintiffs and California Subclass Members. The sale of these cellular services is considered services within the meaning of the statute under Civil Code § 1761(b).

258.    Plaintiffs Akins, Lane, and Millhouse and Members of the California Subclass are consumers pursuant to this statute.

259.    T-Mobile violated the CLRA by way of Civil Code § 1770(a)(5). In particular, T-Mobile represented (and continues to represent) that its services have benefits and characteristics which they do not have – mainly that T-Mobile has adequate data security practices to ensure that consumers' Private Information is safe and secure from unauthorized disclosure.

260.    T-Mobile is aware that this misrepresentation, which is a significant factor for its commercial success, is false and misleading.

261.    Plaintiffs Akins, Lane, and Millhouse and Members of the California Subclass seek injunctive or other equitable relief to ensure that T-Mobile hereafter adequately safeguards Private

CLASS ACTION COMPLAINT
CASE NO.                                                -53-

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

Information by implementing reasonable security procedures and practices. This relief is important because T-Mobile still holds Private Information related to Plaintiffs Akins, Lane, and Millhouse and Members of the California Subclass. Plaintiffs Akins, Lane, and Millhouse and Members of the California Subclass have an interest in ensuring that their Private Information is reasonable protected.

262.    Pursuant to Cal. Civ. Code § 1782, on August 27, 2021, Plaintiffs Akins, Lane, and Millhouse mailed T-Mobile notice in writing, via U.S. certified mail, return receipt requested, of the particular violations of Cal. Civ. Code § 1770 of the CLRA and demand that they rectify the actions described above by providing complete monetary relief, agreeing to be bound by T-Mobile's legal obligations and to give notice to all affected customers of their intent to do so. If T-Mobile fails to take the actions demanded to rectify their violations of the CLRA, Plaintiffs Akins, Lane, and Millhouse will amend their complaint seek damages and attorneys' fees as allowed by the CLRA.

## COUNT VIII

**Violation of the California Consumer Privacy Act,**

**("CCPA") Cal. Civ. Code §§ 1798.100, et seq. (§ 1798.150(a))**

263.    Plaintiffs reallege and reincorporate by reference herein all paragraphs alleged above.

264.    Plaintiffs Akins, Lane, and Millhouse bring this claim individually and on behalf of Members of the California Subclass.

265.    T-Mobile had a duty to implement and maintain reasonable security procedures and practices with regard to Plaintiffs and the California Subclass.

266.    Plaintiffs Akins, Lane, and Millhouse and Members of the California Subclass provided to T-Mobile their nonencrypted and nonredacted personal information as defined in § 1798.81.5 in the form of their Personal Information.

267.    T-Mobile violated the California Consumer Privacy Act, or CCPA, by failing to protect Plaintiffs' and Members of the California Subclass' Personal Information from unauthorized

access and siphoning, theft, or disclosure as a result of T-Mobile's violation of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the Personal Information.

268.    As a direct and proximate result of T-Mobile's acts, including but not limited to its failure to encrypt its systems and otherwise implement and maintain reasonable security procedures and practices, Plaintiffs' and California Subclass Members' Personal Information was subjected to unauthorized access and siphoning, theft, or disclosure as a result of T-Mobile's violation of the duty.

269.    As a direct and proximate result of T-Mobile's acts, including not limited to its failure to encrypt its systems and otherwise implement and maintain reasonable security procedures and practices, Plaintiffs Akins, Lane, and Millhouse and the California Subclass Members were injured and lost money or property, including but not limited to the loss of Plaintiffs' and the Class Members' legally protected interest in the confidentiality and privacy of their Personal Information, nominal damages, statutory damages, and additional losses as described above.

270.    T-Mobile knew or should have known that its computer systems and data security practices were inadequate to safeguard Plaintiffs' and California Subclass Members' Personal Information and that the risk of a data breach or theft was highly likely.  T-Mobile failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the Personal Information to protect Plaintiffs Akins, Lane, and Millhouse and the California Subclass Members.

271.    T-Mobile is a corporation organized for the profit and financial benefit of its owners, with annual gross revenues exceeding $25 million, and collects Personal Information ("PII") as defined in Cal. Civ. Code § 1798.140.

272.    Plaintiffs Akins, Lane, and Millhouse and the California Subclass Members seek injunctive or other equitable relief to ensure T-Mobile hereafter adequately safeguards Plaintiffs' and California Subclass Members Personal Information by implementing reasonable security procedures

and practices. Such relief is particularly important because T-Mobile continues to hold Plaintiffs' and the California Subclass Members' Personal Information. These individuals have an interest in ensuring that their Personal Information is reasonably protected.

273.    Plaintiffs' counsel has sent a notice letter to T-Mobile's registered agents via certified mail, return receipt requested, on August 27, 2021. Assuming T-Mobile does not cure the Data Breach within 30 days, and Plaintiffs believe any such cure is not possible under these facts and circumstances, Plaintiffs Akins, Lane, and Millhouse intend to promptly amend this Complaint to seek actual damages and statutory damages of no less than $100 and up to $750 per customer on record subject to the Data Breach on behalf of the California Class as authorized by the CCPA.

## COUNT IX

### Violation of the California Unfair Competition Law,
### Unlawful Business Practices, Cal. Bus. & Prof. Code § 17200, *et seq.*

274.    Plaintiffs reallege and reincorporate by reference herein all paragraphs alleged above.

275.    Plaintiffs Akins, Lane, and Millhouse bring this claim individually and on behalf of Members of the California Subclass.

276.    T-Mobile has violated Cal. Bus. And Prof. Code § 17200, et seq. by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitutes acts of "unfair competition" as defined in Cal. Bus. Prof. Code § 17200 with respect to the services provided to the California Class.

277.    T-Mobile engaged in unlawful acts and practices with respect to the services by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting Plaintiffs' and California Subclass Members' Personal Information with knowledge that the information would not be adequately protected; and by storing Plaintiffs' and Statewide Members' Personal Information in an unsecure environment in violation of California's data breach

statute, Cal. Civ. Code § 1798.81.5, which requires T-Mobile to take reasonable methods of safeguarding the Personal Information of Plaintiffs Akins, Lane, and Millhouse and the California Subclass Members.

278.    In addition, T-Mobile engaged in unlawful acts and practices by failing to disclose the Data Breach to California Subclass Members in a timely and accurate manner, contrary to the duties imposed by Cal. Civ. Code § 1798.82.

279.    As a direct and proximate result of T-Mobile's unlawful practices and acts, Plaintiffs Akins, Lane, and Millhouse and California Subclass Members were injured and lost money or property, including but not limited to the price received by T-Mobile for the services, the loss of California Subclass Members' legally protected interest in the confidentiality and privacy of their Personal Information, nominal damages, and additional losses as described above.

280.    T-Mobile knew or should have known that it's computer systems and data security practices were inadequate to safeguard the California Subclass Members' Personal Information and that the risk of a data breach or theft was highly likely, especially given T-Mobile's inability to adhere to basic encryption standards and data disposal methodologies.  T-Mobile's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Members of the California Subclass.

281.    California Subclass Members seek relief under Cal. Bus. & Prof. Code § 17200, et seq., including, but not limited to, restitution to Plaintiffs and California Subclass Members of money or property that T-Mobile may have acquired by means of T-Mobile's unlawful, and unfair business practices, restitutionary disgorgement of all profits accruing to T-Mobile because of its unlawful and unfair business practices, declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT X

**Violation of the California Unfair Competition Law,**

**Unfair Business Practices, Cal. Bus. & Prof. Code § 17200,** *et seq.*

282.    Plaintiffs reallege and reincorporate by reference herein all paragraphs alleged above.

283.    Plaintiffs Akins, Lane, and Millhouse bring this claim individually and on behalf of Members of the California Subclass.

284.    T-Mobile has engaged in unfair acts and practices with respect to the services by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting Plaintiffs' and California Subclass Members' Personal Information with knowledge that the information would not be adequately protected; by storing Plaintiffs' and Statewide Subclass Members' Personal Information in an unsecure electronic environment; and by failing to properly dispose of equipment containing sensitive Personal Information.  These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs Akins, Lane, and Millhouse and California Subclass Members.  These acts were likely to deceive the public into believing their Personal Information was securely stored, when it was not. The harm these practices caused to Plaintiffs and California Subclass Members outweighed their utility, if any.

285.    T-Mobile engaged in unfair acts and practices with respect to the provision of services by failing to take proper action following the Data Breach to enact adequate privacy and security measures and protect California Subclass Members' Personal Information from further unauthorized disclosure, release, data breaches, and theft.  These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs Akins, Lane, and Millhouse and California Subclass Members.  These acts were likely to deceive the public into believing their Personal Information was securely stored, when it was not.   The harm these practices

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

caused to Plaintiffs Akins, Lane, and Millhouse and California Subclass Members outweighed their utility, if any.

286.    As a direct and proximate result of T-Mobile's unfair practices and acts, Plaintiffs Akins, Lane, and Millhouse and California Subclass Members were injured and lost money or property, including but not limited to the price received by T-Mobile for the services, the loss of California Subclass Members' legally protected interest in the confidentiality and privacy of their Personal Information, nominal damages, and additional losses as described above.

287.    T-Mobile knew or should have known that it's computer systems and data security practices were inadequate to safeguard the California Subclass Members' Personal Information and that the risk of a data breach or theft was highly likely, especially given T-Mobile's inability to adhere to basic encryption standards and data disposal methodologies.   T-Mobile's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Members of the California Subclass.

288.    California Subclass Members seek relief under Cal. Bus. & Prof. Code § 17200, et seq., including, but not limited to, restitution to Plaintiffs Akins, Lane, and Millhouse and California Subclass Members of money or property that T-Mobile may have acquired by means of T-Mobile's unlawful, and unfair business practices, restitutionary disgorgement of all profits accruing to T-Mobile because of its unlawful and unfair business practices, declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

## COUNT XI

### Violation of the Florida Deceptive And Unfair Trade Practice Act ("FDUTPA"), Fla. Stat. § 501.201, Et Seq.

289.    Plaintiffs reallege and reincorporate by reference herein all paragraphs alleged above.

290.    Plaintiff Gay brings this claim individually and on behalf of Members of the Florida

1  Subclass.

2      291.    FDUTPA prohibits "unfair methods of competition, unconscionable acts or practices,

3  and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. §

4  501.204.

5      292.    T-Mobile engaged in the conduct alleged in this Complaint through transactions in

6  and involving trade and commerce. Mainly, the Data Breach occurred through the use of the internet,

7  an instrumentality of interstate commerce.

8      293.    While engaged in trade or commerce, T-Mobile violated the FDUTPA, including,

9  among other things, by (1) failing to implement and maintain appropriate and reasonable security

10  procedures and practices to safeguard and protect the Personal Information of the Florida Subclass;

11  (2) failing to disclose that its computer systems and data security practices were inadequate to

12  safeguard and protect the Personal Information of the Florida Subclass; and (3) failing to disclose

13  the data breach in a timely and accurate manner in violation of Fla. Stat. § 501.171.

14      294.    T-Mobile knew or should have known that its computer systems and security

15  practices were inadequate to safeguard Members of the Florida Subclass' Personal Information

16  entrusted to it, and that risk of a data breach or theft was highly likely.

17      295.    T-Mobile should have disclosed this information because T-Mobile was in a superior

18  position to know the true facts related to its defective data security.

19      296.    T-Mobile's failures constitute false and misleading representations, which have the

20  capacity, tendency, and effect of deceiving or misleading consumers, including the Florida Subclass

21  Members, regarding the security of T-Mobile's network and aggregation of Personal Information.

22      297.    These representations upon which consumers, including the Florida Subclass

23  Members, relied were material representations (*i.e.* as to T-Mobile's adequate protection of Personal

24  Information), and consumers (including Florida Subclass Members) relied on those representations

CLASS ACTION COMPLAINT
CASE NO.                  -60-

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

to their detriment.

298.    T-Mobile's actions constitute unconscionable, deceptive, or unfair acts or practices because, as alleged herein, T-Mobile engaged in immoral, unethical, oppressive, and unscrupulous activities that are and were substantially injurious to T-Mobile's customers, including Florida Subclass Members.

299.    In committing the acts alleged above, T-Mobile engaged in unconscionable, deceptive, and unfair acts and practices by omitting, failing to disclose, or inadequately disclosing to past, current, and future customers, including the Florida Subclass Members, that it did not follow industry best practices for the collection, use, and storage of the Personal Information.

300.    As a direct and proximate result of T-Mobile's unlawful practices and acts, Plaintiff Gay and Members of the Florida Subclass have been harmed and have suffered damages including, but not limited to: damages arising from identity theft and fraud; out-of-pocket expenses associated with procuring identity protection and restoration services; increased risk of future identity theft and fraud, and the costs associated therewith; and time spent monitoring, addressing and correcting the current and future consequences of the Data Breach.

301.    As a direct and proximate result of T-Mobile's unconscionable, unfair, and deceptive acts and omissions, Plaintiff Gay's and Florida Subclass Members' Personal Information was disclosed to third parties without authorization, causing and will continue to cause Plaintiffs and Florida Class Members damages.  Accordingly, Plaintiff Gay and Florida Subclass Members are entitled to recovery actual damages, an order providing declaratory and injunctive relief, and reasonable attorneys' fees and costs, to the extent permitted by law.

## COUNT XII

### Violation of the New York General Business Law § 349

302.    Plaintiffs reallege and reincorporate by reference herein all paragraphs alleged above.

303.    Plaintiffs Morton and George bring this claim individually and on behalf of Members of the New York Subclass.

304.    T-Mobile engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce and furnishing of services, in violation of N.Y. Gen. Bus. Law § 349(a), including but not limited to the following:

(a)    T-Mobile misrepresented material facts to Plaintiffs Morton and George and the New York Subclass by representing that it would maintain adequate data privacy and security practices and procedures to safeguard New York Subclass Members' Personal Information from unauthorized disclosure, release, data breaches, and theft;

(b)    T-Mobile misrepresented material facts to Plaintiffs Morton and George and the New York Subclass by representing that it did and would comply with the requirements of federal and state laws pertaining to the privacy and security of Plaintiffs' and the New York Subclass' Personal Information;

(c)    T-Mobile omitted, suppressed, and concealed material facts of the inadequacy of its privacy and security protections for Plaintiffs' and the New York Subclass' Personal Information;

(d)    T-Mobile engaged in deceptive, unfair, and unlawful trade acts or practices by failing to maintain the privacy and security of Plaintiffs' and New York Subclass Members' Personal Information, in violation of the duties imposed by and public policies reflected in applicable federal and state laws, resulting in the data breach. These unfair acts and practices violated duties imposed by laws including the Federal Trade Commission Act, 15 U.S.C. § 45;

(e)    T-Mobile engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the data breach to the New York Subclass in a timely and accurate manner, contrary to the duties imposed by N.Y. Gen. Bus. Law § 899-aa(2).

305.    T-Mobile knew or should have known that its computer systems and data security practices were inadequate to safeguard the New York Subclass Members' Personal Information entrusted to it, and that risk of a data breach or theft was highly likely.

306.    T-Mobile should have disclosed this information because it was in a superior position to know the true facts related to the defective data security.

307.    T-Mobile's failure constitutes false and misleading representations, which have the capacity, tendency, and effect of deceiving or misleading consumers (including Plaintiffs and New York Subclass Members) regarding the security of T-Mobile's network and aggregation of Personal Information.

308.    The representations upon which consumers (including Plaintiffs Morton and George and New York Subclass Members) relief were material representations (*i.e.* as to T-Mobile's adequate protection of Personal Information), and consumers (including Plaintiffs Morton and George and New York Subclass Members) relied on those representations to their detriment.

309.    T-Mobile's conduct is unconscionable, deceptive, and unfair, as it is likely to, and did, mislead consumers acting reasonably under the circumstances.  As a direct and proximate result of T-Mobile's conduct, Plaintiffs Morton and George and New York Subclass Members have been harmed, in that they were not timely notified of the data breach, which resulted in profound vulnerability to their Personal Information.

310.    As a direct and proximate result of T-Mobile's unconscionable, unfair, and deceptive acts and omissions, Plaintiffs Morton's and George's and New York Class Members' Personal Information was disclosed to third parties without authorization, causing and will continue to cause Plaintiffs Morton and George and New York Subclass Members damages.

311.    Plaintiffs Morton and George and New York Subclass Members seek relief under N.Y. Gen. Bus. Law § 349(h), including, but not limited to, actual damages, treble damages, statutory

CLASS ACTION COMPLAINT
CASE NO.                                    -63-

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

damages, injunctive relief, and/or attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all Class and Statewide Subclass Members, request judgment against T-Mobile and that the Court grant the following:

A.      For an Order certifying the Nationwide Class and/or the Statewide Subclasses as defined herein, and appointing Plaintiffs and their Counsel to represent the certified Classes;

B.      For equitable relief enjoining T-Mobile from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and the Class Members' Personal Information, and from refusing to issue prompt, complete, and accurate disclosures to the Plaintiffs and Class Members;

C.      For injunctive relief requested by Plaintiffs, including but not limit to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and Class and Subclass Members, including but not limited to an order:

1.  Prohibiting T-Mobile from engaging in the wrongful and unlawful acts described herein;

2.  Requiring T-Mobile to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

3.  Requiring T-Mobile to delete, destroy and purge the personal identifying information of Plaintiffs and the Class and Subclass Members unless T-Mobile can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and the Class and Subclass Members;

4.  Requiring T-Mobile to implement and maintain a comprehensive Information

Security Program designed to protect the confidentiality and integrity of the personal identifying information of Plaintiffs and the Class and Subclass Members' personal identifying information;

5. Prohibiting T-Mobile from maintaining Plaintiffs' and Class and Subclass Members' personal identifying information on a cloud-based database;

6. Requiring T-Mobile to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on T-Mobile's systems on a periodic basis, and ordering T-Mobile to promptly correct and problems or issues detected by such third-party security auditors;

7. Requiring T-Mobile to engage independent third-party security auditors and internal personnel to run automated security monitoring;

8. Requiring T-Mobile to audit, test, and train its security personnel regarding any new or modified procedures;

9. Requiring T-Mobile to segment data by, among other things, creating firewalls and access controls so that if one area of T-Mobile's network is compromised, hackers cannot gain access to other portions of T-Mobile's systems;

10. Requiring T-Mobile to conduct regular database scanning and securing checks;

11. Requiring T-Mobile to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiffs and class members;

12. Requiring T-Mobile to conduct internal training and education routinely and

CLASS ACTION COMPLAINT
CASE NO.                                        -65-

BURSOR & FISHER, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel. (925) 300-4455

continually, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

13. Requiring T-Mobile to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with T-Mobile's policies, programs, and systems for protecting personal identifying information;

14. Requiring T-Mobile to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor T-Mobile's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

15. Requiring T-Mobile to meaningfully educate all class members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as steps affected individuals must take to protect themselves;

16. Requiring T-Mobile to implement logging and monitoring programs sufficient to track traffic to and from T-Mobile's servers; and

17. For a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate T-Mobile's compliance with the terms of the Court's final judgment, to provide such reports to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment; and

D.    For an award of damages, including actual, nominal, and consequential damages, as

allowed by law in an amount to be determined;

      E.     For an award of punitive damages;

      F.     For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

      G.     For prejudgment interest on all amounts awarded; and

      H.     Such other and further relief as this Court may deem just and proper.

### **JURY DEMAND**

Plaintiffs demand a trial by jury on all claims so triable.

Dated: August 31, 2021              Respectfully submitted,

**CARSON & NOEL, PLLC**

By:     */s/ Wright A. Noel*
             Wright A. Noel

Wright A. Noel (Bar No. 25264)
20 Sixth Avenue, NE
Issaquah, Washington, 98027
Telephone: (425)-395-7786
Facsimile: (425) 837-5396
Email: wright@carsonnoel.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (*pro hac vice forthcoming*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com

1

2

3        **BURSOR & FISHER, P.A.**
         L. Timothy Fisher (*pro hac vice forthcoming*)
4        Sean L. Litteral (*pro hac vice forthcoming*)
         1990 North California Boulevard, Suite 940
5        Walnut Creek, CA 94596
         Telephone: (925) 300-4455
6        Facsimile: (925) 407-2700
         Email: ltfisher@bursor.com
7                slitteral@bursor.com

8
         *Attorneys for Plaintiffs*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

CLASS ACTION COMPLAINT
CASE NO.                          -68-